NYBOE v. JACOB DOLL & SONS, Inc. (No. 7084.)

(Supreme Court, Appellate Division, First Department. April 9, 1915.)

SALES ⬥�longmapsto481—CONDITIONAL SALES—RIGHTS OF BUYER.

Personal Property Law (Consol. Laws, c. 41) § 65, declares that, when goods sold on condition that the title shall remain in the vendor until payment are retaken by the vendor, they shall be retained for 30 days, during which time the buyer may comply with the terms of the contract and receive the property, and at the expiration of such period the vendor may cause such articles to be sold at public auction, and unless they are so sold within 30 days the buyer may recover the amount paid. The purchaser of a piano on the installment plan defaulted in payments, and requested the seller to retake the instrument and hold it until payments

could be assumed. The piano was held under that arrangement for some months, and then the seller and purchaser agreed that the seller should dispose of the instrument, and if the buyer desired to purchase another piano he should receive a credit for the amount paid on the old instrument. *Held*, that the contract was valid, and the purchaser could not recover the amount paid on the piano.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1449–1455; Dec. Dig. ☜481.]

Appeal from Trial Term, Bronx County.

Action by Maude Nyboe against Jacob Doll & Sons, Incorporated. From a judgment for plaintiff, and an order denying new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Wentworth, Lowenstein & Stern, of New York City (Louis Lowenstein, of New York City, of counsel, and Bertram L. Marks, of New York City, on the brief), for appellant.

Fullerton Wells, of New York City, for respondent.

CLARKE, J. The action was brought to recover $380 paid by the plaintiff to the defendant on account of the purchase price of a player piano, under a conditional sale agreement, upon the ground that the defendant did not comply with the provisions of the statute covering such sales.

Personal Property Law (Consolidated Laws, c. 41; Laws 1909, c. 45) § 65, provides:

"Sale of Property Retaken by Vendor.—Whenever articles are sold upon the condition that the title thereto shall remain in the vendor, or in some other person than the vendee, until the payment of the purchase price, or until the occurrence of a future event or contingency, and the same are retaken by the vendor, or his successor in interest, they shall be retained for a period of thirty days from the time of such retaking, and during such period the vendee or his successor in interest, may comply with the terms of such contract, and thereupon receive such property. After the expiration of such period, if such terms are not complied with, the vendor or his successor in interest, may cause such articles to be sold at public auction. Unless such articles are so sold within thirty days after the expiration of such period, the vendee or his successor in interest may recover of the vendor the amount paid on such articles by such vendee or his successor in interest under the contract for the conditional sale thereof."

The contract provides:

"That, whereas, the said Jacob Doll & Sons, Incorporated, has this day agreed to sell to the said party of the second part a certain musical instrument [describing it] at the price agreed of six hundred and fifty and $^{00}/_{100}$ dollars, to be paid as follows: Fifteen and $^{00}/_{100}$ dollars this day, and two hundred and $^{00}/_{100}$ dollars allowed for a Wilbur Mhy. Upright Piano No. 71296 in trade, and one hundred and five and $^{00}/_{100}$ dollars paid on a previous contract also allowed, and fifteen and $^{00}/_{100}$ dollars more on the 9th day of each and every month hereafter until the whole of the purchase price above set forth is fully paid as specified above."

It appeared from the evidence that the contract for the purchase of the piano in suit was made in the name of William Nyboe, the plaintiff's husband, in the first instance, and that under that contract the

Wilbur piano alluded to, for which $200 was allowed, was a piano that belonged to his wife, plaintiff, which was turned over to the defendant when that first contract was made. During the time the contract was in the name of William Nyboe further payments amounting to $105 were made, so that when this new contract for this same piano, of which the plaintiff already had possession, was made, there was allowed to her the value of her Wilbur piano and the $105 paid on that previous contract. Under the new contract $75 was paid in all.

In June, 1912, plaintiff being in default in the monthly payment provided for in the contract, she and her husband went to the defendant's place of business and an agreement was entered into, as testified by one of defendant's salesmen, between them and Mr. Bodie, the manager:

"That Mr. Nyboe stated he could not pay any more money at that time, and his suggestion was to put it on storage until he was able to take it out again and pay the storage and cartage. Mr. Bodie stated that would be perfectly agreeable; if he paid the arrears, and the storage and cartage when he was ready to take the piano, that it would be all right; that they would hold the piano for him until he was able to do that."

As the result of that agreement the piano was taken from the plaintiff's premises to the defendant's for storage. In November, 1912, there was another interview between the plaintiff and her husband and the manager of the defendant. Plaintiff's witness, the salesman, testified that Mr. Nyboe said:

"I am willing to give up the claim to this piano, providing you will allow me what I paid when I take up the account again. I may buy another piano some day; and if you will allow me what I paid on it, I will give up all claim on this piano. Q. Was there anything said about his having a purchaser for the piano at that time? A. There was something in regard to that, but the management told him it would be better to let the house sell it for him; when he was ready to retake another piano, they would allow him what he paid."

Mr. Nyboe testified to this conversation in November as follows:

"I had the piano advertised, and I went down to see the manager on what terms I could sell it, so he told me at that time the best thing I could do was to let them take possession, and whenever I got ready to buy another piano he would allow me everything what was paid on it, except storage and interest. Of course, he told me, if I sell it to somebody else, I would lose it. He would take these conditions. I pay storage and interest, and allow me full value on the payment of a new one. I told him to go ahead and take possession of it. My wife and myself were present at the time. My wife made that arrangement herself."

At the close of the plaintiff's case the defendant moved to dismiss upon the ground that the plaintiff had wholly failed to make out a cause of action under the statute; that by the plaintiff's own testimony it appears a new agreement was entered into whereby the plaintiff, when she came to purchase a new piano from the defendant, would receive full allowance for payments made under this agreement. The motion being denied, exception being taken, defendant rested, and then renewed this motion to dismiss, which was denied, and which was excepted to. Whereupon the plaintiff moved for the direction of a

verdict, and the defendant moved to direct a verdict for the defendant. The court thereupon directed a verdict for the plaintiff for the sum of $380.

The obvious purpose of the Legislature in enacting the statute governing conditional sales was to protect purchasers on the installment plan from the oppression of unconscionable dealers, to prevent the forfeiture of considerable sums paid on account by reason of a default in the payment of a small installment. The statute was wise and salutary, enacted in response to public sentiment, aroused by many instances of harsh and brutal conduct perpetrated upon people quite helpless to protect themselves. Intended to be a shield against harsh and unfair conduct in strictly enforcing the technical requirements of such contract, it never was intended to be used as a sword to enforce harsh and technical requirements.

The record is absolutely barren of any evidence of oppression or unfair treatment of the plaintiff by the defendant. On the contrary, it shows that, when the plaintiff fell into arrears in June, the defendant did not seize and carry away the piano, but at the request of the plaintiff and her husband took it upon storage until they were able to take it out again and pay the storage and cartage; that it so held the piano under that agreement, and without the payment of any further sums, from June until November, when, upon the request of the plaintiff and her husband, a new agreement was made, under which the piano was surrendered under the agreement that, whenever she was ready to buy another piano, the defendant would allow her everything that had been paid—that is to say, the whole $380, made up of the $200 allowed for the old piano turned in on the first contract, $105 paid on the first contract, and the $75 paid on the second contract, less the storage that had accrued from June to November, and interest.

It seems to me that that created a valid new contract upon sufficient consideration. The provisions of the statute were thereby waived. There was no necessity for the defendant to hold the piano for 30 days, and within 30 days thereafter to have sold it at public auction, upon due notice; and no cause of action exists for the recovery of the amounts paid. In Seeley v. Prentiss Tool & Supply Co., 158 App. Div. 853, 144 N. Y. Supp. 48, the court said:

"It is true that the recent case of Crowe v. Liquid Carbonic Co., 208 N. Y. 396 [102 N. E. 573], held that the parties in their contract could not waive the provisions of the statute, but we do not understand the court to hold that the parties, acting in good faith, could not enter into a subsequent agreement for the settlement of their rights; that they could not make a new contract in relation to the property which had been purchased under a conditional sales agreement. It is one thing to contract in advance to waive the provisions of a statute, based upon considerations of public policy, and quite another to hold that parties may not enter into a subsequent agreement in relation to such property. * * * All that was contemplated by the statute was to afford protection to persons who had in good faith made purchases under conditional sales agreements by providing a reasonable opportunity for redeeming the property and of compelling an equitable disposition of the funds where the property was sold; but it was never understood, so far as we are able to discover, that the statute was to prevent persons or corporations from entering into new agreements in relation to such property while in the possession of the purchaser, and where the vendor had made no move under

his contract to repossess himself of the property. The case of Fairbanks v. Nichols, 135 App. Div. 298 [119 N. Y. Supp. 752], seems to be a sufficient authority for holding that in the present case the plaintiff has failed to establish a cause of action, and considerations of justice approve."

The direction of a verdict for the plaintiff, and the judgment entered thereon, should be reversed, and the complaint be dismissed, with costs to the appellant. All concur.

---

GOTHAM NAT. BANK OF NEW YORK v. MARTIN et al. (No. 7096.)

(Supreme Court, Appellate Division, First Department. April 9, 1915.)

ATTACHMENT ☞25—GROUND—NONRESIDENCE—STATUTE.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 61–72; Dec. Dig. ☞25.]

Appeal from Special Term, New York County.

